MOSS v SHELBY MUTUAL INSURANCE COMPANY

Docket No. 50406. Submitted January 7, 1981, at Grand Rapids.—
Decided April 22, 1981.

In 1966, Fred W. Moss and Albert Casemier, then doing business
as Moss & Casemier, built a wooden deck at a private resi-
dence. Moss and Casemier were at that time insured by Shelby
Mutual Insurance Company of Shelby, Ohio, under policies of
comprehensive general liability coverage. One of the two poli-
cies expired in 1966 and the other expired in 1969. Both
contained products hazard-completed operations hazard exclu-
sions. In 1973, three persons were injured when the deck
collapsed. The injured parties brought an action against Moss
and Casemier and others, alleging that the deck had been
negligently constructed. When Shelby Mutual refused to defend
the suits, Moss and Casemier brought an action against Shelby
Mutual. The Kent Circuit Court, Stuart Hoffius, J., found in
favor of Moss and Casemier, holding that the insurance policies
applied because the accident for which the injured parties were
suing occurred not in 1973 but in 1966 when the deck was
negligently constructed, and therefore, the products hazard-
completed operations hazard exclusions in the policies did not
apply. Defendant appeals. *Held:*

The "accident" occurred in 1973, when the deck collapsed
and the injuries occurred. Because the insurance policies had
ceased to be effective several years earlier, Shelby Mutual has
no liability under the policies. Application of a so-called two-
accident concept, in which it is held that a first accident
occurred when the negligent act was committed and a second
accident occurred when the injuries were suffered, would ren-
der nugatory any products hazard-completed operations exclu-
sions.

Reversed.

INSURANCE — ACCRUAL OF RESPONSIBILITY — OCCURRENCE OF INJURY.

Responsibility accrues under an indemnity policy at the time
when the complainant is damaged rather than at the time of

the negligent act which caused the damage; therefore, an insurer has no liability under an insurance policy issued to a contractor which ceased to be effective several years prior to the time that a complainant was injured in the collapse of a structure and which contained a products hazard-completed operations hazard exclusion.

*Warner, Norcross & Judd* (by *Peter L. Gustafson),* for plaintiffs.

*Dilley, Dewey & Waddell, P.C.* (by *Jonathan S. Damon),* for defendant.

Before: ALLEN, P.J., and J. H. GILLIS and D. F. WALSH, JJ.

ALLEN, P.J. On January 11, 1980, the Circuit Court for Kent County issued an opinion holding that the 1965 and 1966 insurance policies issued by defendant Shelby Mutual Insurance Company of Shelby, Ohio (hereinafter Shelby), to plaintiffs provided coverage against the pending claim filed against plaintiffs by James Carpenter and Ann and John Oole. On March 7, 1980, the Circuit Court for Kent County ordered defendant Shelby to defend plaintiffs, reimburse plaintiffs for reasonable costs and attorney fees, and pay any award, not exceeding policy limits, resulting from the pending action against plaintiffs. From that order Shelby appeals of right.

The facts are undisputed. In 1966, plaintiffs constructed a wooden deck at the home of James and Katrina Oosting. At that time, plaintiffs were named insureds in insurance policies issued by the defendant insurance company which provided for comprehensive general liability coverage. Policy number CL935-731 was effective October 1, 1965, through October 1, 1966, and policy number CL944-434 was effective October 1, 1966, through

October 1, 1969. On June 26, 1975, James Carpenter and Ann and John Oole filed suits against plaintiffs and others in which they claimed that plaintiffs were liable for injuries resulting to them when the wooden deck collapsed because they had constructed the deck in a negligent manner. When plaintiffs contacted the defendant insurance company in order to have them defend the suits, the defendant insurance company refused, claiming that the products hazard-completed operations hazard exclusion contained in the insurance policies precluded coverage. Plaintiffs then filed suit against the defendant insurance company in Kent County Circuit Court on June 21, 1977.

On July 11, 1977, the defendant insurance company moved for summary judgment on the grounds that the accidents to Mr. Carpenter and Mr. and Mrs. Oole, which took place on July 10, 1973, fell outside the policy period of both policies and that neither policy provided coverage for completed operations hazards. On April 2, 1979, plaintiffs filed a motion for declaratory and/or summary judgment. Hearings on the parties' motion were held on March 16 and May 24, 1979. In an opinion dated January 11, 1980, the trial court held that the 1965 and 1966 policies provided coverage because the accident for which Mr. Carpenter and the Ooles were suing did not take place in 1973, when they were allegedly injured, but in 1966, when the deck was allegedly negligently constructed. The trial court concluded that since the accident took place in 1966, the completed operations hazard exclusion contained in the policies did not act to bar coverage.

Plaintiffs subsequently filed a motion for entry of judgment. Following a hearing held in February 1980, the trial court issued an order providing: (1)

that defendant Shelby defend plaintiffs in the underlying suits; (2) that defendant Shelby pay plaintiffs reasonable costs and expenses, including attorneys' fees, incurred by them in defending the underlying actions; and (3) that defendant Shelby pay on behalf of plaintiffs all sums which plaintiffs became legally obligated to pay complainants in the underlying actions, under the terms of the insurance policies. Defendant Shelby appeals as of right raising two issues.

The first issue is whether the trial court erred in concluding that the "accident" took place in 1966, when the deck was allegedly negligently constructed, rather than in 1973, when the injuries resulting therefrom occurred. There are four Michigan Court of Appeals decisions we must consider. The first two, *Brant v Citizens Mutual Automobile Ins Co,* 4 Mich App 596; 145 NW2d 410 (1966), and *Atkins v Hartford Accident & Indemnity Co,* 7 Mich App 414; 151 NW2d 846 (1967), concern a products hazard-completed operations exclusion similar to that in the instant case.[1] These two

---

[1] "Products Hazard. The term 'products hazard' means (1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence

cases are distinguishable, however, by their focus on that portion of the products hazard-completed operations exclusion which excluded liability if the "accident" occurs away from the premises of the named insured. In *Brant,* the insured sold the wrong type space heater to a customer. The customer took the heater away from the insured's premises and installed it at his residence. The space heater exploded, injuring the customer. The customer brought suit against the insured who, in turn, asked the insurer to defend. Although the injury occurred during the policy period, the insurer declined to defend claiming the "accident" occurred away from the insured's premises and therefore was excluded from coverage by the products hazard-completed operations exclusion. The *Brant* panel held that the fact situation was actually composed of two incidents, both of which they regarded as "accidents". The first "accident" occurred when the insured sold the wrong space heater to the customer. The second "accident" occurred when the heater exploded injuring the customer. The *Brant* opinion further held that the insured could reasonably construe the insurance policy to provide coverage for liability arising out of the first "accident", *i.e.,* the sale of the wrong space heater which did occur on the insured's premises.

Similarly, in *Atkins, supra,* the two-"accident" concept was applied to the negligent sale of a prescription drug to a customer. The insured, a pharmacy, sold a drug to a customer who took the drug home and was later injured by the use of the drug while away from the insured's premises. The insurer declined to defend the insured against a

---

of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations."

suit brought by the injured customer. The insurer relied upon the products hazard-completed operations exclusion to deny liability coverage under the policy. The *Atkins* Court cited *Brant, supra,* and held that there were two "accidents". The first "accident" was the negligent sale of the drug; the second "accident" was the subsequent injury to the customer. The *Atkins* Court found coverage under the policy based upon the first "accident" occurring on the premises of the insured.

The remaining two opinions are directly on point but reach conflicting results. Both opinions involve the determination of whether an injury which occurs after the expiration of an insurance policy period, which insurance policy contains a products hazard-completed operations exclusion, may nevertheless come within the coverage of that insurance policy by virtue of the two-"accident" concept. *Ornamental Iron & Stair Co v General Accident & Life Assurance Corp, Ltd,* 68 Mich App 259; 242 NW2d 544 (1976), was the first opinion issued. In *Ornamental,* a painter was electrocuted by a high tension wire while working on the roof of a building within the Pontiac mall shopping center. The painter's administratrix brought suit against Pontiac mall and others. Pontiac mall filed a third-party complaint for indemnification and/or contribution against plaintiff and other various contractors allegedly responsible for the negligent construction of a safety fence designed to protect against the electrical hazard that killed the painter. Plaintiff then began a suit for declaratory relief to determine if the insurance policy in force at the time of the allegedly negligent installation of the fence required the defendant to defend and to pay any judgment rendered against the plaintiff. The *Ornamental* panel found that the prod-

ucts hazard-completed operations exclusion was ambiguous. The *Ornamental* opinion quoted at length from *Nielson v Travelers Indemnity Co,* 174 F Supp 648, 658-659 (ND Iowa, 1959), *aff'd* 277 F2d 455 (CA 8, 1960), which had quoted *Kendrick v Mason,* 234 La 271; 99 So 2d 108 (1958). In *Ornamental,* the Court found it significant that the insurance policy did not specifically recite that the products hazard-completed operations exclusions referred to contractors who have no products for sale but who have performed a contract for the erection of a structure. Finding the policy ambiguous, the Court construed the exclusion against the insurer and found it inapplicable. The Court further found that the acts of negligence committed during construction were an "accident" while the policy was in full force and effect and for which premiums were charged. The *Ornamental* Court found the conclusion that the insurer was liable under the policy to the insured inescapable.

The fourth Court of Appeals decision, *Employers Mutual Liability Ins Co v Michigan Mutual Auto Ins Co,* 101 Mich App 697; 300 NW2d 682 (1980), reaches a different result. In *Employers,* the insured owned a motor boat from 1967 to 1974. He sold the boat in 1974. Approximately a year later, the boat exploded, injuring six people. The injured parties sued the insured alleging that he negligently installed a gas line and filter in the boat while he owned it, which caused the subsequent explosion and injuries.

At the time the insured owned the boat (but not at the time of the explosion), he held two insurance policies: (1) Wolverine Boatowners and (2) Employers Mutual Homeowners. At the time of the explosion (but not at the time he owned the boat), the insured held two different insurance

policies: (3) Michigan Mutual Homeowners and (4) Employers Mutual Personal Umbrella and Medical Expense. The insured sought indemnification and legal representation for the principal action from the three insurance companies (under all four policies). All three insurers denied liability.

The *Employers* Court found applicable an exclusionary clause in the first policy (Wolverine), which is not present in the instant policy, and held that the Wolverine policy did not provide coverage. In order to determine whether policies (2), (3), and/or (4) provided coverage, the *Employers* Court was faced with the identical issue before this Court, *i.e.,* whether the "accident" occurred at the time of the alleged negligent act, and/or whether the "accident" occurred at the time of the injury to the third persons. The *Employers* Court stated:

"We have reviewed cases from other jurisdictions which have considered the question. The majority of them hold that the time when the complainant is damaged, rather than the time of the negligent act, is the point at which responsibility accrues under an indemnity policy. See 57 ALR2d 1385 and the cases cited therein. We adopt the general rule as being correct and hold that since the damages did not arise until after the Employers Mutual homeowners policy had been cancelled, it did not cover the accident. *Cf., Remmer v Glens Falls Indemnity Co,* 140 Cal App 2d 84; 295 P2d 19; 57 ALR2d 1379 (1956), and *National Aviation Underwriters, Inc v Idaho Aviation Center, Inc,* 93 Idaho 668; 471 P2d 55 (1970)." *Employers, supra,* 703-704.

See also 7 ALR3d 1262; 58 ALR3d 12; and 62 ALR3d 889.

Having found that the "accident" occurred when the injuries occurred, the *Employers* Court ruled that there was no coverage under the second pol-

icy (Employers), which was not in effect at the time of the injuries. Policies (3) and (4) were in effect at the time of the injuries. The *Employers* Court found that these policies did not clearly exclude coverage and that the insurance companies were therefore required to defend the insured.

We find the majority rule, as expressed in *Employers, supra,* to be persuasive. We hold that the "accident" in the present case occurred when the injuries occurred in 1973. The insurance policies issued by defendant to plaintiffs had ceased to be effective several years earlier. Therefore, we find that defendant Shelby has no liability under the insurance policies it had issued to the insured. In support of this finding, we note that the application of a two-"accident" concept renders nugatory any products hazard-completed operations exclusionary language. Any injury for which an insured is sued will of necessity be based upon some alleged negligent act which occurred before the insured sold the product or completed the operation and before the insured relinquished control. If an "accident" actually occurs at the time of the negligent act, any products hazard-completed operations language attempting to exclude coverage for a subsequent "accident" which occurs away from the premises of the insured or after the insured has completed operations and relinquished control would serve no purpose.[2]

In deference to the respected trial judge, we further note that *Employers, supra,* was not de-

---

[2] The insurance policies herein quite clearly excluded coverage for products hazard-completed operations. It is clear that the parties intended to exclude such coverage. The policies described the hazards for which coverage was provided, premises operations—carpentry in the construction of detached private residences. Expressly excluded from coverage were completed operations. The policies clearly indicated a separate and additional premium must be paid by the insured to obtain coverage for completed operations.

cided until some ten months after the trial court's decision in the instant case. Thus, the trial court did not have the advantage, which we enjoy, of the decision by this Court adopting the holding of a majority of the states that the date the complainant is injured, rather than the date of the negligent act, is the date on which responsibility accrues under an indemnity policy. 57 ALR2d 1385.

The lower court's order finding coverage under the policies issued by defendant Shelby to plaintiffs is hereby reversed.

Reversed. Costs to defendant Shelby.